# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

S.R.J.,

          *Plaintiff,*

   v.

MARRIOTT INTERNATIONAL,
INC.,VISTANA SIGNATURE
EXPERIENCES, INC., MARRIOTT
WORLDWIDE CORPORATION,
MARRIOTT VACATIONS WORLDWIDE
CORPORATION, and ABC
CORPORATIONS NOS.1-10.,

          *Defendants.*

Civil Action No. 2:21-cv-1863

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

## I.     BACKGROUND

On December 17, 2021, Plaintiff S.R.J. filed a Complaint asserting that Defendants Marriott International, Inc., Vistana Signature Experiences, Inc., Marriott Worldwide Corporation, Marriott Vacations Worldwide Corporation, and ABC Corporations NOS. 1-10 ("Defendants") are liable for "repeated, improper and nonconsensual sexual contact with S.R.J." by hotel spa message therapist, Fernando Chagoyan ("Mr. Chagoyan"). (ECF No. 1, p. 5). S.R.J.'s Complaint asserts claims for Negligence (Count I), Negligence - Respondeat Superior (Count II), Intentional Infliction of Emotional Distress (Count III), Negligent Infliction of Emotional Distress (Count IV), and False Imprisonment (Count V). (ECF No. 1). Before the Court is Defendants' Motion to

Dismiss based on *forum non conveniens*. (ECF No. 23). For the following reasons, the Court will grant the motion.

## II.      STANDARD OF REVIEW

The *forum non conveniens* doctrine permits a district court to "dismiss an action on the ground that a court abroad is the more appropriate and convenient forum for adjudicating the controversy." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007). The principle of *forum non conveniens* "is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507 (1947). "*Forum non conveniens* is a nonmerits ground for dismissal." *Sinochem Int'l Co.*, 549 U.S. at 423 (citations omitted). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 423-24.

A court's analysis proceeds in three steps. First, it must determine whether there is an adequate alternate forum to hear the plaintiff's claims. *Trotter v. 7R Holdings LLC*, 873 F.3d 435, 442 (3d Cir. 2017). Second, it must decide the degree of deference due to the plaintiff's choice of forum. *Id.* And finally, it must "balance the relevant private and public interest factors" to determine whether it would be more appropriate and convenient for the parties to proceed in the alternate forum. *Id.* (quoting *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir. 2010)); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947) (providing a non-exhaustive list of private and public interest factors).

As to the private and public interest factors, to prevail on a *forum non conveniens* motion, the movant must show that the balance of these factors tips in favor of trial in the foreign forum.

*Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991). "If, when added together, the relevant private and public interest factors are in equipoise, or even if they lean only slightly toward dismissal, the motion to dismiss must be denied." *Id.* Private interest factors include, "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive," including "the inability to implead potential third-party defendants." *Gulf Oil Corp.*, 330 U.S. at 508; *see also Piper Aircraft Co.,* 454 U.S 235, 237 (1981). Public interest factors include "administrative difficulties arising from increasingly overburdened courts; local interests in having the case tried at home; desire to have the forum match the law that is to govern the case to avoid conflict of laws problems or difficulty in the application of foreign law; and avoiding unfairly burdening citizens in an unrelated forum with jury duty." *Kisano Trade & Inv. Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013).

"The ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527 (1947).

## III.   ANALYSIS

Defendants argue that the *forum non conveniens* factors weigh in their favor. Specifically, they posit that, "Plaintiff's choice of forum … is not entitled to substantial deference… Mexico is an adequate alternative forum to adjudicate this lawsuit, [and] the public and private interests strongly favor dismissal for *forum non conveniens*." (ECF No. 25, p. 8). The Court agrees that dismissal is warranted on *forum non conveniens* grounds.

### A. S.R.J.'s choice of forum is not entitled to significant deference.

When a plaintiff chooses her home forum, it is assumed that such a choice is convenient. *Piper Aircraft Co.*, 454 U.S. at 236. However, such a forum choice is not dispositive. Defendants argue that the United States is not S.R.J.'s true "home forum" because she has lived in Australia for years. They argue, therefore, that her choice of the Western District of Pennsylvania ("Western District") should not be entitled to the presumption that it is an appropriate forum. (ECF No. 23, p. 16).

To support her choice of forum, S.R.J. claims that she "is domiciled in Pennsylvania, with an address in Sewickley, Pennsylvania 15143." (ECF No. 1, p. 1). Defendants point out that the residence in question "was transferred to [Plaintiff] by her parents following the subject incident and following her retention of counsel." (ECF No. 35, p. 3). It is undisputed that S.R.J. is a United States citizen. (See ECF No. 35, p. 2). Nevertheless, she has resided and worked in Australia since 2016 pursuant to a Temporary Skilled Worker Visa. (ECF No. 33, p. 11). In addition, S.R.J. has formed a romantic partnership in Australia. (ECF No. 35, p. 2). Further, after the incident in Mexico, S.R.J. received medical treatment in Australia. (ECF No. 25, p. 11). Notwithstanding her ongoing residence in Australia, S.R.J. avers that she is still registered to vote in Pennsylvania, she has voted by absentee ballot "in every possible election since she has resided in Australia," she receives mail in Pennsylvania, she holds a Pennsylvania Driver's License, and she maintains a bank account with a bank headquartered in the Western District. (ECF No. 33, pp. 11-12). When all of these facts are taken together, they establish that the Western District is not, as S.R.J. contends, her "home forum" which should be afforded great deference for the purposes of this litigation and the instant *forum non conveniens* inquiry.

As Defendants note in their motion, "[t]he touchstone inquiry regarding the level of deference owed [to] a plaintiff's choice of forum is not the citizenship or residence of the parties, but the convenience of the forum."  (ECF No 23, p. 15) (citing *Kisano Trade & Invest. Ltd.*, 737 F.3d at 875).  Even if the Court were to accept S.R.J.'s claim of domicile in Pennsylvania as true, the facts of record support a finding that the Western District is not a convenient forum for the adjudication of this dispute.  Plaintiff herself has not resided in the Western District for some time—including the time of the assault and the subsequent treatment, etc.   The evidence relating to her claims are overwhelmingly centered around the resort in Mexico, including "the physical premises of the hotel, employees of the Hotel and Spa, other witnesses, the Tourist Assistance Center (and its investigative and medical file), the Mexican police (and their investigative file), information concerning Plaintiff's Mexican action against the Hotel, contracts between the Hotel and Spa and other potential Mexican entities, and any information related to a criminal investigation of [Mr.] Chagoyan" are all located in Mexico. (ECF No. 35, p. 5).  Nor—as discussed below—can S.R.J. contend that Defendants have any special connection to the Western  District with respect to the claims in her case.  The facts of this case show nothing that would weigh in favor of honoring S.R.J.'s choice of forum.  She has, at best, only a tenuous ongoing connection to the Western District —one which does not relate in any way to the claims at bar.  Thus, the Court gives little deference to S.R.J.'s forum choice.

### B.  Mexico is an adequate alternative forum.

"An adequate alternative forum exists if the defendants are amenable to process in the other jurisdiction and the alternative forum permits litigation of the disputed subject matter." *Lexington Ins. Co. v. Forrest*, 263 F. Supp. 2d 986, 1000 (E.D. Pa. 2003) (citing *Piper*, 454 U.S. at 255, n.22). Defendants argue that Mexico is an available alternative forum.  S.R.J. argues that Mexico would

be an improper alternative forum because it "would force [her] repeatedly to return to the scene of her assault, conduct proceedings in a foreign language, and … navigate foreign and unknown civil, criminal, police, and medical institutions in another country for a second time." (ECF No. 33, p. 13).   The Court finds that Mexico is an adequate alternative forum.

All Defendants have agreed to accept service of process in Mexico, thus satisfying the availability requirement.   (ECF No. 23-9).   Additionally, "Mexican Attorneys Raoul Chollet Rochin and Arturo Arista Garza set forth in detail that Plaintiff may bring suit and recover damages in a Mexican court for the subject matter complained of in the Amended Complaint." (ECF No. 35, p. 3); (ECF No. 23-7); (ECF No. 23-8).   Specifically, Article 12 of the Mexican Federal Civil Code states in part, "Mexican laws govern all persons located in [Mexico], as well as all acts and events that occur within its territory or jurisdiction and those wherein the parties submit to such laws…" (ECF No. 23-8, p. 4).   Applying Article 12 to the present case, Attorney Garza states in his affidavit that, "…there is no question that Mexico has expressed a sovereign interest in having Mexican laws govern situations, as in this case, that occur within its territory." (*Id.*).   Thus, Defendants are amenable to process in Mexico, and Mexico permits litigation of this matter.

Plaintiff's own conduct supports of the adequacy of Mexico as an alternative forum. As Defendants note, S.R.J. "has already filed and is presently maintaining a suit in Mexico concerning the exact incident that is the subject of this litigation." (ECF No. 35, p. 3) (ECF No. 23-5).   As a result, even if S.R.J.'s argument had merit (it does not), the Court's ruling clearly would not "force [her] repeatedly to return to the scene of her assault." (ECF No. 33, p. 13).   She has already voluntarily returned to the scene as she is engaged in litigation in Mexico.

The Court finds that all requirements for an available alternative forum are satisfied, and that Mexico is an adequate alternative forum.   Next, it must weigh the relevant public and private

interests to determine whether trial would cause "oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience." *Koster*, 330 U.S. at 524.

**C. Private factors heavily weigh in favor of Mexico as the appropriate forum.**

In her Opposition, S.R.J. argues that the "litany of evidence located in Mexico ... is not directly relevant to the crux of [her] claim[s]." (ECF No. 33, p. 13). The Court disagrees. It is difficult to comprehend how S.R.J. can conclude that the evidence located in Mexico is not relevant to the subject incident. Specifically, "the physical premises of the hotel, employees of the Hotel and Spa, other witnesses, the Tourist Assistance Center (and its investigative and medical file), the Mexican police (and their investigative file), information concerning Plaintiff's Mexican action against the Hotel, contracts between the Hotel and Spa and other potential Mexican entities, and any information related to a criminal investigation of [the alleged assailant], Chagoyan" are all located in Mexico. (ECF No. 35, p. 5). This evidence is directly relevant to the crux of S.R.J.'s claims. The only apparent link the present action has with the Western District is S.R.J.'s assertion that this is her domicile (though, again, she has resided in Australia since 2016), and her family's domicile. (ECF No. 23, p. 7). The vast majority of material evidence is far more accessible in Mexico than in the United States.

To support her choice of forum, S.R.J. also points to Defendants' representatives and corporate designees and presumes that they are "most likely" based in the United States. (ECF No. 33, p. 14). Even taking S.R.J.'s assertion as true, given Defendants' corporate nature—and, specifically, the nature of their business operations—they are in a far better position to bear the burden of sending their representatives and designees to Mexico than having the Mexican Westin employees, the Mexican police officers who investigated the incident, and the Mexican physician who examined S.R.J. immediately after the incident travel to the Western District for proceedings

7

in this case.  Indeed, S.R.J. concedes that Defendants "are collectively worth billions of dollars, specialize in international travel services, … and do plenty of business on a regular basis while 'navigat[ing] foreign and unknown' environments." (ECF No. 33, p. 15).  If a financial burden is to be shouldered by anyone (which it must), the Court holds that it should be shouldered by the willing and able Defendants.  (*See* ECF No. 23-9).

In addition, the aforementioned Mexican parties cannot be compelled to testify or produce relevant documents in a United States forum.  Nonetheless, S.R.J. asserts that "location will … make no difference in the ability to compel witnesses." (ECF No. 33, p. 15).   Plaintiff points to the Court's remote conferencing capability, arguing that such technology could be used to "effectuate remote depositions, hearings, trials, and other proceedings." (*Id.*).  As the district court stated in *Montgomery v. Oberti*, 945 F. Supp. 2d 1367 (S.D. Fla. 2013) when faced with a virtually identical argument made by the plaintiff in response to the motion for dismissal on *forum non conveniens*, "the Court finds that no adequate substitute exists for the witnesses' live testimony and that the lack of access to this testimony weighs very strongly in favor of dismissal." *Id.* at 1376.  The Court concurs.  Notably, in the recent case of *J.D. et al v. Price et al*, Civil Action No. 2:20-cv-00749, 2022 WL 3048787, *3 (W.D. Pa. Aug. 3, 2022), the Court noted that the plain language of Federal Rule of Civil Procedure 43(a) establishes that "live testimony in open court is a deeply entrenched default that will only be excused when three factors are met—good cause, compelling circumstances, and appropriate safeguards."  The Court went on to explain why video testimony is not a practical equivalent to in-person testimony, and that its expanded use has not rendered it legally equivalent to in-person testimony.  *Id.* at *3-*5.  It is of the firm opinion that, absent good cause in compelling circumstances, "[a]t trial, the witnesses' testimony **must** be taken in open court . . . ." Fed. R. Civ. P. 43(a) (emphasis added).  The Court's reluctance to condone

video testimony, particularly in a case where no witnesses or evidence are located in the Western District and the entire trial would devolve into a trial by video, weighs heavily in favor of dismissal.

In sum, the vast majority of potential witnesses are located in Mexico, the site of the incident is located in Mexico, the medical reports are located in Mexico, and the legal documents concerning any investigation into the incident are located in Mexico. (ECF No. 23-1, pp. 6-7). The cost and practical problems associated with obtaining the aforementioned witnesses and evidence in the Western District are unreasonable.

Lastly, adjudicating this action in the Western District, a United States forum, would present an additional hurdle: Defendants would be unable to implead likely third-party defendants. *See Piper Aircraft*, 454 U.S. at 259. Joseph Bramuchi, Vice President of Marriott Vacations Worldwide Corporation, testified in a sworn declaration that in January 2020 (when the incident giving rise to this action occurred), "Marriott Vacations Worldwide Corporation and Vistana Signature Experiences, Inc. had no direct ownership, maintenance, or operational interest with respect to the resort and hotel property known as The Westin Los Cabos Resort Villas & Spa … ('the "Resort')."[1] (ECF No. 23-4, p. 4). Further, Mr. Bramuchi testified that "[i]n January 2020, the Resort was operated by Hoteles Cabos K22.5, S. de R.L. de C.V., which is a Mexican business entity… [and] the Spa was operated by Operadora Pena de Servicios Los Cabos S. de R.L. de C.V.

---

[1] Plaintiff makes much of Mr. Bramuchi's use of the word "direct" when characterizing Marriott Vacations Worldwide Corporation and Vistana Signature Experiences, Inc's interest in the Resort and Spa (or, in this case, lack thereof). Specifically, Plaintiff argues that "Mr. Bramuchi's use of the word 'direct' makes it impossible to determine from his testimony whether there are relationships between Marriott Vacations, the other Defendants, and the Westin that are 'indirect' and what that might mean." (ECF No. 33, p. 19). Even if the Court were to conclude that Defendants had an "indirect" connection to the Resort and Spa, such a finding would not change the analysis of the *forum non conveniens* factors. Defendants would still be unable to implead the Mexican operators of the Resort and Spa in a United States forum, irrespective of their relationship to them.

('Operadora Pena') [which] is a Mexican business entity." (*Id.*). (Collectively "The Resort and Spa"). As such, the operators of the Resort and Spa are not subject to personal jurisdiction in Pennsylvania. If the Court adjudicated this action, Defendants would be unable to implead Hoteles Cabos K22.5, S. de R.L. de C.V or Operadora Pena, the true operators of the Resort and Spa, respectively. Instead, Defendants would have to file a separate action in Mexico. Given that "all claims arising out of an accident should be resolved in one proceeding to conserve judicial resources and avoid the possibility of inconsistent judgements," Mexico is the proper forum to determine the present action. *Tonkon v. Denny's Inc.*, No. Civ. A. 86-1186, 1987 WL 8837, at *3 (E.D. Pa. Mar. 31, 1987), *aff'd*, 835 F.2d 284 (3d Cir. 1987).

### D.  Public factors heavily weigh in favor of Mexico as the appropriate forum.

Despite S.R.J.'s status as a United States citizen, Mexico has a significantly greater local interest in determining the present action than does the Western District. The incident occurred in Mexico at a Resort and Spa owned by Mexican entities. (ECF No. 23-4, p. 4). Additionally, the alleged perpetrator of the sexual assault was, until his untimely death on November 8, 2021, a Mexican citizen. (ECF No. 33-24, p. 9). As such, the "local interest in having localized controversies decided at home" necessitates adjudicating this action in Mexico. *Gulf Oil Corp.*, 330 U.S. at 509. The Western District has one alleged tie to the present action–S.R.J.'s domicile. Even taking S.R.J.'s domicile status as true, there is no dispute that she has resided in Australia since 2016. (ECF No. 25, p. 6). While the Western District has a local interest in providing a forum for its citizens to redress their grievances, such interest pales in comparison to the overwhelming interest that Mexico has in this case.

In a similar vein, because the Western District has little interest in adjudicating this action, imposition of jury duty on its citizens would be an unfair burden. Again, the sole relationship this

case has to Pennsylvania is S.R.J'.s alleged domicile.  To impose jury duty on Pennsylvania citizens in cases which have only the most remote and tenuous ties to the forum, would place an unnecessary burden upon those citizens with matters that are of little consequence to them and their community.  As such, this factor weighs in favor of dismissal.

Further, the Court will dismiss the present action in order to avoid unnecessary complications associated with the conflict of laws and the application of foreign law.  "The Pennsylvania Supreme Court abandoned *lex loci delicti* (the law where the offense was committed) for choice of laws in tort actions 'in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court.'"  *Jones v. FC USA, Inc.,* Civil Action No.17-1126, 2017 WL 5453497, at *5 (E.D. Pa. Nov. 14, 2017) (citing *Griffith v United Air Lines, Inc.,* 203 A.2d 796, 805 (Pa. 1964)).  In other words, "the primary approach of the Pennsylvania Supreme Court in choice of law is governmental interest analysis."  *Piper Aircraft Co.,* 630 F.2d at 170.  Here, beyond the bare assertion by S.R.J. that she is a domiciliary of Pennsylvania, there are, as explained above, no other Pennsylvania interests plausibly implicated in this case.   Rather, it appears as though a thorough choice of law analysis would reveal that Mexico clearly has a significantly greater governmental interest in this case than does Pennsylvania.  Thus, it is possible if not likely that  retaining this action would require the Court to apply Mexican law, with which it has no familiarity.

Lastly, S.R.J. points to the 4.6% decline in case filings in the Western District for the proposition that this forum is "free from worry about administrative burden." (ECF No. 33, p. 17).  While this may be true, the Court holds it to be in no way dispositive to its analysis of the required factors in this case.  The caseload and efficiency of the Western District, alone, will not weigh in favor of retaining this action.

When viewing the *forum non conveniens* factors, as a whole, the Court holds that this case must be dismissed. It is of the firm belief that permitting this case to continue in the Western District would be oppressive and vexatious to Defendants and out of proportion to S.R.J.'s convenience—which itself is minimized by her lack of actual presence. The Court's decision is informed and bolstered by the fact that the United States Court of Appeals for the Third Circuit and its district courts have routinely upheld the use of *forum non conveniens* to dismiss factually similar actions involving a foreign hotel's alleged negligence. *See, e.g., Doe v. the Ritz Carlton Hotel*, LLC, 666 F. App'x 180, 203 (3d Cir. 2016) (upholding *forum non conveniens* dismissal of negligence action stemming from a sexual assault at a Cayman Islands hotel); *Wilmont v. Marriott Hurghada Management, Inc.*, 712 F. App'x 200, 203 (3d Cir. 2017) (upholding *forum non conveniens* dismissal of negligence action stemming from a poolside injury at an Egyptian hotel); *Jones v. FC USA, Inc.,* No. CV 17-1126, 2017 WL 5453497, at *1 (E.D. Pa. Nov. 14, 2017) (granting *forum non conveniens* dismissal of negligence action arising from a sexual assault which occurred "while receiving a massage [on vacation] during a beach excursion in the Dominican Republic"); *Cohen v. Holiday Inns, Inc.,* No. CIV. A. 90-3017, 1991 WL 983, at *4 (E.D. Pa. Jan. 4, 1991) (granting *forum non conveniens* dismissal of negligence action stemming from an injury involving a scuba diving expedition which was sponsored and advertised by a Mexican hotel); *Colantonio v. Hilton Int'l Co.,* No. CIV.A. 03-1833, 2004 WL 1810291, at *12 (E.D. Pa. Aug. 13, 2004) (granting *forum non conveniens* dismissal of negligence action stemming from a trip and fall at a hotel in Rome, Italy); *Rudisill v. Sheraton Copenhagen Corp.,* 817 F. Supp. 443, 448 (D. Del. 1993) (granting *forum non conveniens* dismissal of negligence action arising from injuries sustained at a Denmark hotel).

## IV.   CONCLUSION

Defendants' motion for dismissal on the ground of *forum non conveniens* will be granted.

An Order of Court will follow.


_10/19/2022_
DATED:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE